IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>FIRST AMERICAN HOME<br>WARRANTY CORP.,<br><br>　　　　Defendant. | 22-cv-1003-NR |

## MEMORANDUM ORDER

Stewart Abramson is on a crusade against robocalls.  He has been involved in dozens of suits alleging violations of the Telephone Consumer Protection Act (TCPA).  *See* ECF 21-1.  This time, he sued First American Home Warranty, a company that allegedly robo-dialed him and tried to sell him a home warranty plan over the phone.  First American argues that Mr. Abramson *did* purchase a plan, and so his claim must be resolved in arbitration – due to the warranty plan's arbitration clause.  To that end, it moves to compel arbitration or, in the alternative, to dismiss for failure to state a claim.  After carefully considering the parties' arguments, the limited record provided, and the relevant law, the Court denies both motions without prejudice, since additional limited discovery is needed on the issue of the formation of the arbitration agreement.

## FACTUAL BACKGROUND[1]

On July 5, 2022, Mr. Abramson received a phone call at home.  ECF 28-1, p. 1; ECF 1, ¶ 22.  The call seemed to be pre-recorded.  ECF 1, ¶ 24.  The message said,

---

[1] The facts are taken here not only from the complaint, but also from declarations submitted in connection with the briefing on the motion to compel arbitration.  ECF 22, ECF 28.  The parties agree that the Court can consider these materials and decide the motion on a summary-judgment standard.  So, all facts and reasonable inferences are construed in favor of the non-movant, Mr. Abramson. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

1

"hello, this is a call from your utility company…please press one to get your compensation." *Id.* at ¶ 23. Pressing "1" transferred Mr. Abramson to a live individual named "David," who said he was from First American Home Warranty and offered the company's home warranty services. *Id.* at ¶¶ 25-28. Mr. Abramson provided the information David requested during the conversation, including his credit card information. ECF 28-1, p. 1; ECF 22, p. 2. But they did not discuss specific terms. ECF 28-1, p. 1. Still, First American sent an email confirming Mr. Abramson's alleged purchase of a plan and telling him to create an online account. ECF 22, pp. 2-3. According to the email, he would receive a contract "within 7-10 days from the date the first payment is processed," and would then "have a 30 day review period." ECF 22-1, p. 3. Mr. Abramson quickly created an account in an effort to cancel any contract. ECF 28-1, p. 2; ECF 22, p. 3. Unable to do so online, he canceled over the phone. ECF 28-1, p. 2. First American never charged his credit card or sent him a contract. *Id.*

The sample contract on First American's website contained a "resolution of disputes" section that "constitute[d] an agreement to arbitrate disputes on an individual basis." ECF 22-2, p. 5. It provides that "[a]ll disputes and claims arising out of or relating to the Contract must be resolved by binding arbitration," including "all disputes and claims between Company and the Homeowner, Company and the Seller, and claims that arose prior to purchase of the contract." *Id.* Importantly, the section provides that "[t]his arbitration agreement will survive the termination of this Warranty Contract." *Id.* The broad terms apply to Mr. Abramson, even though he terminated any warranty contract that may have existed, and the robocall at issue in his TCPA claim took place before any purchase. So if this arbitration provision, in fact, covers Mr. Abramson and is otherwise valid, he cannot proceed with this lawsuit.

## DISCUSSION & ANALYSIS

At the outset, the Court notes that it has jurisdiction to decide this issue because the key question is whether the parties mutually assented to the underlying agreement containing the arbitration provision. *MZM Constr. Co., v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397-98 (3d Cir. 2020) (Section 4 of the Federal Arbitration Act "affirmatively requires a court to decide questions about the formation or existence of an arbitration agreement, namely the element of mutual assent." (cleaned up)).

Moreover, the summary-judgment standard of review applies because the validity of the agreement is not immediately apparent from the complaint; that is, the parties put the underlying agreement to be bound by arbitration at issue. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774-76 (3d Cir. 2013); *Dobbs v. Health IQ Ins. Servs., Inc.*, No. 21-5276, 2022 WL 2974713, at *3 (E.D. Pa. July 27, 2022) ("A motion to compel arbitration is judged under a Rule 56 summary judgment standard when arbitrability is not apparent on the face of the complaint."). Both parties agree that this is the proper standard. ECF 21, p. 6; ECF 28, pp. 5-6.

**I.   The Court orders limited discovery regarding the formation of the arbitration agreement.**

Ordinary principles of contract formation govern the underlying contract containing the agreement to arbitrate; there must be an offer, acceptance, and consideration. *Kirleis v. Dickie*, 560 F.3d 156, 160 (3d Cir. 2009). During the telemarketing call, First American's representative offered Mr. Abramson a home warranty plan in exchange for payment. At issue is whether he actually accepted that offer. First American contends that Mr. Abramson accepted the warranty by phone when he gave his credit card information. ECF 21, p. 4. Mr. Abramson maintains that he provided the information First American requested with the

understanding that he would not be charged until he actually reviewed and accepted his contract. ECF 28-1, p. 1.

At least based on the competing evidence now presented to the Court, a genuine dispute of material fact exists regarding whether any underlying agreement was properly formed. That said, the record is currently too sparse for the Court to definitively decide that question, or order that that issue be tried to resolution.[2] The only evidence adduced was a declaration from Kristin Swan – Director of Business Compliance at First American (ECF 22), a copy of the email sent to Mr. Abramson (ECF 22-1), a sample First American contract (ECF 22-2), and a declaration from Mr. Abramson (ECF 28-1). Based on these submissions, it appears that Mr. Abramson could have reviewed a sample contract online, but wasn't slated to receive his own contract to review until 7-10 days after payment, which itself was scheduled to be a full month after the alleged purchase call. ECF 22-1. And Mr. Abramson took quick action to clarify that he did not intend to accept a warranty plan, and First American never charged him. ECF 28-1.

Notably, however, no additional detail regarding what David did or did not say to Mr. Abramson is in the record. So there is insufficient evidence of what terms Mr. Abramson heard before allegedly purchasing the plan entirely over the phone. This differs from situations where an arbitration term is contained within a signed document, or at least incorporated by reference into a signed document. The Court also does not have a copy of Mr. Abramson's personalized contract, which may or may not have been created. Finally, there is insufficient evidence of what Mr. Abramson actually reviewed or acknowledged after receiving the confirmation email; Mr.

---

[2] After additional discovery, if it turns out that genuine disputes of material fact still exist as to the formation of the arbitration agreement, then the Court would set that issue down for trial. *See* 9 U.S.C § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

Abramson, for his part, claims that he never had to acknowledge any terms. ECF 28-1, p. 2.

Construing all reasonable inferences in Mr. Abramson's favor, as required, the Court cannot say for certain whether Mr. Abramson accepted First American's offer for a home warranty plan. And if the underlying contract was not formed, its arbitration provision would not apply to him. *MZM*, 974 F.3d at 397-98 ("[W]ithout an *agreement* to arbitrate, there can be no arbitration." (emphasis in original)). This is so even if the arbitration agreement is severable. *Id.* ("[T]he doctrine of severability presumes an underlying, existent, agreement." (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 108 (3d Cir. 2000))).

When plaintiffs put forward facts calling into doubt the formation of an agreement to arbitrate, the "parties should be entitled to additional discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration…judging the motion under a summary judgment standard." *Guidotti*, 716 F.3d at 776 (cleaned up); *see also Bush v. Comcast Cable Comm's Mgmt., LLC*, No. 19-1004, 2020 WL 4199077, at *5 (W.D. Pa. July 22, 2020) (Ranjan, J.) (considering renewed motion under Rule 56 standard following limited discovery on motion to compel arbitration).

Therefore, the Court will allow discovery to proceed, limited to the issue of the making of the arbitration agreement. The Court finds that additional information regarding the conversation between David and Mr. Abramson – especially what was discussed and agreed to – as well as more details about what Mr. Abramson clicked on and read, are particularly critical.

## II. The motion to dismiss is denied without prejudice.

The Court cannot decide the merits of the motion to dismiss unless and until it has resolved the arbitration issue. *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) ("Arbitrability is a gateway issue[.] … Thus, after a motion to compel arbitration has been filed, the court must refrain from further action until it determines arbitrability. District courts may not alter this sequencing[.]" (cleaned up)). So the motion to dismiss is denied without prejudice.

* * *

For the foregoing reasons, both of First American's motions (ECF 20) are **DENIED** without prejudice. The parties shall have **90 days** to complete limited discovery on the issue of the formation of the arbitration agreement, consistent with this memorandum opinion. *See Bush*, 2020 WL 4199077, at *4 n. 1 ("The Third Circuit has instructed district courts to permit discovery in such circumstances, but that the discovery must be narrowly tailored to avoid frustrating the FAA's interest in speedy dispute resolution."). The parties may serve up to **five** requests for production each, up to **five** interrogatories each, and up to **five** requests for admission each. They may also complete no more than **three** depositions per side. The parties may mutually agree to higher discovery limits; if they cannot agree, a party can also request higher limits with leave of Court and for good cause. After this limited discovery is complete, the Court will then consider any renewed motion to compel arbitration.

DATE: February 24, 2023                                BY THE COURT:

                                                       /s/ *J. Nicholas Ranjan*
                                                       United States District Judge